UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIMON CAZARES,<br><br>        Plaintiff,<br><br>    v.<br><br>TAREK NASSIF, et al.,<br><br>        Defendants. | Case No.: 1:08-cv-00232-AWI-SAB (PC)<br><br>FINDINGS AND RECOMMENDATION REGARDING DEFENDANT NASSIF'S MOTION FOR SUMMARY JUDGMENT<br><br>[ECF No. 37] |

Plaintiff Simon Cazares is appearing pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.

**I.**

**BACKGROUND**

This action is proceeding against Defendants Dr. Tarek Nassif and Dr. D. Coleman for deliberate indifference of a serious medical need relating to the treatment of Plaintiff's wrist injury.

On March 27, 2014, Defendant Nassif filed a motion for summary judgment.[1]  Plaintiff did not file an opposition.

///

///

---

[1] On November 12, 2013, Defendant D. Coleman filed an answer to the complaint.  (ECF No. 31.)

1

## II.

## LEGAL STANDARD

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mutual Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

Defendants do not bear the burden of proof at trial and in moving for summary judgment, they need only prove an absence of evidence to support Plaintiff's case. In re Oracle Corp. Securities Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986)). If Defendants meet their initial burden, the burden then shifts to Plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial." In re Oracle Corp., 627 F.3d at 387 (citing Celotex Corp., 477 U.S. at 323). This requires Plaintiff to "show more than the mere existence of a scintilla of evidence." Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505 (1986)).

However, in judging the evidence at the summary judgment stage, the Court may not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted), cert. denied, 132 S.Ct. 1566

(2012). The Court determines *only* whether there is a genuine issue for trial and in doing so, it must liberally construe Plaintiff's filings because he is a pro se prisoner. Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

## III.

## DISCUSSION

### A.     Plaintiff's Claim[2]

On June 24, 2006, Plaintiff suffered a serious fracture to his left wrist while playing sports. Plaintiff's wrist was "grossly deformed" and he immediately sought medical care. Plaintiff states that the x-rays of the left wrist revealed "comminuted fractures of the distal radius and ulnar styloid process" and a substantial seven millimeter displacement. Later that day, Plaintiff was taken to Coalinga Regional Medical Center (CRMC) and during his visit with Defendant Dr. Tarek, Plaintiff informed Defendant Tarek that he was experiencing excruciating pain. Plaintiff was provided with a removable splint and bandage wrap and Plaintiff "was not provided with a necessary and required immobilizing hard plaster and/or fiberglass . . . cast and/or necessary and required corrective surgical procedures for his severely broken wrist."

### B.     Defendant's Undisputed Facts

1.     Plaintiff is a 52-year-old inmate in the custody and control of the California Department of Corrections and Rehabilitation (CDCR) since August 19, 2002.

2.     On June 24, 2006, Plaintiff was incarcerated at Pleasant Valley State Prison (PVSP) in Coalinga, CA. Plaintiff has since been reassigned to the California Correctional Training Facility in Soledad, CA.

3.     On June 24, 2006, Plaintiff was playing a game of soccer with other inmates when he fell. Plaintiff promptly sought medical care and treatment from the CDCR medical staff at PVSP.

---

[2] Plaintiff's complaint is verified and his allegations constitute evidence where they are based on his personal knowledge of facts admissible in evidence. Jones v. Blanas, 393 F.3d 918, 922-923 (9th Cir. 2004). The summarization of Plaintiff's claim in this section should not be viewed by the parties as a ruling that the allegations are admissible in evidence. Evidentiary issues will be addressed, to the limited extent necessary, in the sections which follow.

4. X-rays were taken of Plaintiff's left wrists, and these X-rays revealed the presence of a comminuted fracture of the distal radius and ulnar styloid process along with a 7mm displacement.

5. Following the diagnosis by the PVSP medical personnel, Plaintiff was prescribed pain medication by Dr. Coleman, who also directed that Plaintiff be transported to the Emergency Room at Coalinga Regional Medical Center (CRMC) for a higher level of treatment and care.

6. At CRMC, Plaintiff was treated in the Emergency Room by Defendant Tarek Nassif, M.D., who was then the on-duty physician in the Emergency Room.

7. Dr. Nassif is not an employee of Coalinga Regional, rather, he is an independent contractor who provides services to those who seek treatment and care in the Emergency Room.

8. Dr. Nassif examined Plaintiff's wrist and arm, and determined that the Plaintiff was suffering from a fracture.

9. Dr. Nassif further determined that the Plaintiff need orthopedic treatment and care; however, at the time that Plaintiff was in the Emergency Room CRMC did not have an on-call orthopedist who could see Plaintiff. CRMC likewise did not have the necessary facilities and personnel necessary for the type of surgical treatment Plaintiff would require.

10. Dr. Nassif splinted Plaintiff's injured arm and wrist, and further secured the splint by wrapping it with a bandage. A sling and swathe was then applied to Plaintiff to further secure the splinted extremity.

11. Dr. Nassif noted in Plaintiff's medical records that Plaintiff needed a referral to an orthopedist, and he directed Plaintiff to keep the splint on until he was seen by an orthopedist. Instructions to see an orthopedist were sent with Plaintiff.

12. After verifying that the splint, sling and swathe were properly applied and that Plaintiff retained good circulation, sensation and movement following the application of the splint, sling, and swathe, Plaintiff was returned to PVSP by CDCR personnel.

13. Dr. Nassif provided no further treatment or care following Plaintiff's discharge from CRMC's Emergency Room.

14. Plaintiff did not seek any further treatment or care from Dr. Nassif following his discharge, nor was Dr. Nassif provided any updates or status reports regarding Plaintiff's medical condition.

15. Following Plaintiff's discharge from the CRMC Emergency Room, Plaintiff received his medical care and treatment from CDCR and its medical staff and employees, in addition to those outside provides retained by the CDCR.

16. Plaintiff's medical records reflect that he was stable and in no apparent distress upon his return to PVSP from CRMC's Emergency Room.

17. The medical records further reflect that on June 26, 2006, orders were written for an orthopedics referral.

18. On July 3, 2006, Plaintiff prepared a Health Care Services Request Form which was submitted to the PVSP medical staff.  In this request, Plaintiff notes that he had been told he would be seen by an orthopedist within several days of his injury, and the medical records reflect that PVSP staff was awaiting an orthopedics appointment and were unable to reach the orthopedist.

19. On July 11, 2006, a nurse reported that she had seen the Plaintiff, and that the splint was still in place and the Plaintiff had good circulation, sensation and movement.  She further noted that Plaintiff was scheduled to see another physician the following day.

20. On July 12, 2006, Plaintiff was seen by Dr. Benjamin, who noted that Plaintiff had been injured and sent to CRMC, where a sling was placed and a "recommendation for orthopedic consult that was requested urgent but not done yet." Dr. Benjamin noted that Plaintiff's arm was in a sling, the tips of the fingers were normal in color and Plaintiff was able to move all of them.

21. Dr. Benjamin noted in his report that he spoke with CDC's medical staff, and that the Plaintiff had an "urgent request to be seen by orthopedic for ulna fracture."

22. Dr. Benjamin further directed that Plaintiff was to be brought to the clinic the following morning "to be sent out to UMC for faster orthopedic evaluation."

23. On July 13, 2006, Dr. Benjamin again examined Plaintiff and noted in the chart that he had discussed Plaintiff's case with the transfer nurse at University Medical Center and that it had been

1  agreed that the Plaintiff would be evaluated by orthopedics at University Medical Center's Emergency
2  Room.

3        24.     Plaintiff was subsequently transported to University Medical Center's Emergency
4  Room that evening, where he was diagnosed as suffering a distal left ulnar fracture without any
5  vascular compromise, intact sensation, and normal tendon function in the affected area.

6        25.     An orthopedic follow-up appointment was also scheduled for July 19, 2006, at 9:15
7  a.m.

8        26.     On July 19, 2006, Plaintiff was again seen by CDCR medical providers. During this
9  appointment Plaintiff acknowledged he had been seen by an orthopedic surgeon who had
10 recommended a follow up appointment to consider surgical treatment.

### C. Legal Standard

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing Farmer v. Brennan, 511 U.S. 825, 847, 114 S.Ct. 1970 (1994) and Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392 (1981)) (quotation marks omitted). While conditions of confinement may be, and often are, restrictive and harsh, they must not involve the wanton and unnecessary infliction of pain. Morgan, 465 F.3d at 1045 (citing Rhodes, 452 U.S. at 347) (quotation marks omitted).

Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety, Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted), but not every injury that a prisoner sustains while in prison represents a constitutional violation, Morgan, 465 F.3d at 1045 (quotation marks omitted). To maintain an Eighth Amendment claim, inmates must show deliberate indifference to a substantial risk of harm to their health or safety. Farmer, 511 U.S. at 847; Thomas v. Ponder, 611 F.3d 1144, 1151-52 (9th Cir. 2010); Foster v. Runnels, 554 F.3d 807, 812-14 (9th Cir. 2009); Morgan, 465 F.3d at 1045; Johnson, 217 F.3d at 731; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

For claims arising out of medical care in prison, Plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent."  Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012) (citing Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006)).  The existence of a serious medical need is the objective element of an Eighth Amendment claim and deliberate indifference is the subjective element.  Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012)

**D.    Findings**

1.    Color of State Law

Defendant Nassif argues that he was not acting under color of state law when he provided treatment to Plaintiff on June 24, 2006.

"To state a claim under [section] 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  West v. Atkins, 487 U.S. 42, 48 (1988) (citations omitted).  The presumption is that "conduct by private actors is not state action," Florer v. Congregation Pidyon Shevuyim, N.A., 639 F.3d 916, 922 (9th Cir. 2011), but "'state action may be found if … there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself,'"  Florer, 639 F.3d at 924 (quoting Brentwood Academy v. Tennessee Secondary School Athletic Assoc., 531 U.S. 288, 295 (2001)).  Private parties may be sued under § 1983 only if their conduct is "fairly attributable to the State" and there was an agreement between the state and the private party to deprive plaintiff's constitutional rights.  Lugar v. Edmondson Oil Co., 457 U.S. 922, 936-937 (1982); United Steelworkers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540-1541 (9th Cir. 1989) (citations omitted).  The United States Supreme Court has determined that a private physician who contracts with the State to provide medical care to inmates at a prison hospital acts under color of state law for purposes of section 1983.  West, 487 U.S. at 56.

Here, unlike in West, Defendant Nassif was not contracted with the State to provide medical care to inmates.  Rather, Defendant Nassif has presented undisputed evidence that he an independent

7

contractor, and he is not an employee or agent of CRMC. (ECF No. 37-7, Aff. of Tarek Nassif, M.D. at ¶¶ 3-4.) There was no contract or agreement between CDCR and Defendant Nassif to provide medical services to inmates in the custody of the CDCR. (Id. at ¶ 4.) Defendant Nassif has never been employed by the CDCR and never agreed to serve or function as an agent, official, officer or representative of the CDCR. (Id.) When an inmate was brought into the CRMC Emergency Room for medical care and treatment, the inmate was treated no differently than any other patient seeking medical care and treatment. (Id.)

Based on the above-referenced undisputed facts, the Court concludes that Defendant Nassif was not acting under color of state law when he provided emergency room treatment to Plaintiff on June 24, 2006. See Jackson v. Federal Correctional Inst., No. 2:11-cv-2116-KJN P, 2013 WL 1651859, *4 (E.D. Cal. Apr. 16, 2013) (prisoner failed to state cognizable claim in Bivens action against private hospital for failing to come within the color of state law; noting the Ninth Circuit has consistently dismissed private hospitals and doctors in section 1983 claims for failing to come within the color of state law): but see Estate of Prasad ex re. Prasad v. County of Sutter, 958 F.Supp.2d 1101, 1121-1122 (E.D. Cal. Jul. 30, 2013) (finding that private physician acted under color of state law where his hospital-employer was under a contract with state prison authorities and physician acted as agent of hospital). Defendant Nassif therefore is entitled to summary judgment on Plaintiff's section 1983 claim against him.

2. Eighth Amendment-Deliberate Indifference

Even assuming, arguendo, that Defendant Nassif was acting under color of state law, the Court finds that summary judgment is appropriate because there is no evidence that Defendant Nassif violated Plaintiff's rights under the Eighth Amendment.

The gist of Plaintiff's complaint against Defendant Nassif appears to revolve around Plaintiff's contention that Dr. Nassif should have placed the Plaintiff in a hard plaster and/or fiberglass wrist/arm cast and/or performed the required surgical procedures to correct the broken wrists. Because he was only provided a flexible and removable soft (ace type wrap) bandage, Plaintiff contends Dr. Nassif was deliberately indifferent to his medical needs. Plaintiff further contends that Dr. Nassif and other

8

defendants were informed of his excruciating pain, the need for his wrist to be set in a cast, and the need for corrective surgery yet these complaints were all "delayed, refused, and ultimately denied.

A prisoner's claim of inadequate medical care does not constitute cruel and unusual punishment in violation of the Eighth Amendment unless the mistreatment rises to the level of "deliberate indifference to serious medical needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)).  The two part test for deliberate indifference requires the plaintiff to show (1) "a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096.  A defendant does not act in a deliberately indifferent manner unless the defendant "knows of and disregards an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994).  "Deliberate indifference is a high legal standard," Simmons v. Navajo County Ariz., 609 F.3d 1011, 1019 (9th Cir. 2010); Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004), and is shown where there was "a purposeful act or failure to respond to a prisoner's pain or possible medical need" and the indifference caused harm, Jett, 439 F.3d at 1096.

In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial.  Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-106).  "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106; see also Anderson v. County of Kern, 45 F.3d 1310, 1316 (9th Cir. 1995).  Even gross negligence is insufficient to establish deliberate indifference to serious medical needs.  See Woods v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990).  Additionally, a prisoner's mere disagreement with diagnosis or treatment does not support a claim of deliberate indifference. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).

As an initial matter, Plaintiff's disagreement with the care and treatment rendered by Defendant Nassif does not give rise to an Eighth Amendment violation. Id. In order to establish that a difference of opinion amounted to deliberate indifference, a prisoner must show that the defendants' chosen course of treatment was medically unacceptable and in conscious disregard of an excessive risk to the prisoner's health. Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

      a.      Placement of Hard Cast

In this case, Defendant's expert evidence demonstrates that Defendant Nassif evaluated and treated Plaintiff in the CRMC Emergency Room on June 24, 2006. (ECF No. 38, Aff. of Sean O. Henderson, M.D at ¶ 12, C-J.) Despite Plaintiff's claim that a hard cast should have been placed on his wrist/arm, Defendant Nassif has introduced undisputed expert testimony that under the applicable standard of care, a hard cast was actually prohibited. (Id. at ¶¶ 15-20.) As explained by defense expert, Dr. Henderson, a hard cast is not placed during an emergency room visit due to the propensity and likelihood of swelling and edema in the injured area. If a hard cast is placed and the injured area incurs any swelling or edema, it could lead to serious complications, including potentially limb-threatening complications. (Id. at ¶¶ 16-17.) Therefore, the appropriate medical procedure is to splint the injured area in the Emergency Room to allow the injury site to be examined and a cast applied or corrected surgery to be performed by an orthopedist. (Id. at ¶ 19.)

      b.      Performing Corrective Surgical Procedures

Plaintiff's allegation that Dr. Nassif "denied [him] adequate medical care" by not performing "necessary and required corrective surgical procedures for his] severely broken wrist is without merit. As an initial matter, Dr. Nassif is not an orthopedic surgeon, and as of June 24, 2006, Coalinga Regional did not have the facilities and support personnel required to perform the corrective orthopedic surgery required to treat Plaintiff's comminuted ulnar fracture. (ECF No. 37-7, Aff. of Nassif at ¶ 6.) Given this undisputed evidence, it was impossible for any corrective surgery to be performed on Plaintiff at time he alleges, and Dr. Nassif took further measures by instructing Plaintiff to seek orthopedic follow up treatment and care, which was noted in the discharge summary. (Id. at ¶ 7.)

///

c.     Delay and/or Denial of Medical Treatment

Plaintiff contends that Dr. Nassif "acted with deliberate indifference toward [his]k severe fracture and deformed wrist…when [he] delayed, refused, and ultimately denied plaintiff adequate medical care." (First. Amd. Compl. at ¶ 38, 12:20-25.)  Plaintiff further contends that he informed various defendants "of the excruciating pain [he] was experiencing and the need of plaintiff's wrist to be properly cast and/or any corrective surgery required.  Defendants, knowing of plaintiff's serious medical needs, all delayed, refused, and ultimately denied plaintiff adequate medical treatment.  (Id. at ¶ 39, 13:2-8.)  The undisputed evidence demonstrates that Plaintiff received medical care and treatment while he was in the Emergency Room.  Dr. Nassif, along with other health care providers, examined Plaintiff, which included observing his condition, taking his vital signs, and recording and documenting his medical complaints.  Plaintiff's wrist was placed in a splint, and a sling and swath was applied to secure Plaintiff's injury.  In addition, Plaintiff received pain medication to treat his complaints of pain.  Dr. Nassif also referred Plaintiff for orthopedic follow-up treatment and care, which was communicated to correctional officers who accompanied Plaintiff to the Emergency Room.  Upon discharge, Plaintiff was in stable condition and was instructed to keep the splint on until he was seen by an orthopedic surgeon.  Dr. Nassif provided no further treatment or care, nor was he required to do so, after Plaintiff's discharge.  (Id. at ¶¶ 8-9.)

Plaintiff's complaints regarding the delay in retreatment relate to actions which occurred after his discharge from the Emergency Room and return to PVSP.  Plaintiff contends that two days after his return from the Emergency Room, he began to complaint of inadequate medical care and requested proper care.  (First. Amd. Compl. at ¶¶ 16, 19.)  Plaintiff submits that a prison doctor, not Dr. Nassif, was proscribed Vicodin for pain and Plaintiff was returned to his cell.  (Id. at ¶ 17.)  Over the next few days, Plaintiff continued to request adequate medical care and treatment, including a request to be seen by an orthopedist.  (Id. at ¶¶ 18-20.)

As previously stated, the undisputed facts demonstrates that Dr. Nassif had no further involvement in Plaintiff's medical care and treatment following Plaintiff's discharge from the Emergency Room.  In addition, there is no evidence to demonstrate that Dr. Nassif was advised, or was even required to be advised, of any facts relating to Plaintiff's condition, status, outcome, or

medical treatment following Plaintiff's discharge from CRMC's Emergency Room. Given the lack of contact by Dr. Nassif following Plaintiff's discharge, there is simply no evidence to support Plaintiff's claim that Dr. Nassif was deliberately indifferent to his serious medical needs, and summary judgment should be granted in his favor.

## IV.

## RECOMMENDATION

Based on the foregoing,

IT IS HEREBY RECOMMENDED that Defendant Nassif's motion for summary judgment be GRANTED, and the Clerk of Court be directed to enter judgment in favor of Defendant Nassif.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **twenty (20) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: **May 20, 2014**

UNITED STATES MAGISTRATE JUDGE